1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    HELENE BROWN,                              No.  2:18-cv-01405 CKD

12                    Plaintiff,

13           v.                                  ORDER

14    ANDREW M. SAUL, Commissioner of
      Social Security,
15
                      Defendant.
16

17

18           Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") finding that plaintiff's disability under sections 216(i) and 223(f) of the Social

20    Security Act ("Act") ended on October 15, 2014, and that plaintiff has not become disabled again

21    since that date.  The parties have consented to Magistrate Judge jurisdiction to conduct all

22    proceedings in the case, including the entry of final judgment.  For the reasons discussed below,

23    the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-

24    motion for summary judgment.

25    BACKGROUND

26           Plaintiff, born in 1962, was found disabled beginning on January 1, 2005.  Administrative

27    Transcript ("AT") 16, 27.  The September 21, 2005 decision finding plaintiff disabled stated that

28    she had bipolar disorder and curvature of the spine.  AT 18.  After a continuing disability review

                                                     1

("CDR"), the Commissioner found plaintiff no longer disabled as of October 15, 2014 due to medical improvement.  See AT 16.  Plaintiff asserted that she was still unable to work because of bipolar disorder, chronic low back pain, moderate bilateral scoliosis, alcoholism, and bilateral hearing loss.  See AT 21.

In the decision challenged herein, following an April 25, 2017 hearing and dated July 14, 2017, the ALJ determined that plaintiff's disability ended on October 15, 2014.[1]  AT 16-28.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The most recent favorable medical decision finding that the claimant was disabled is the determination dated September 21, 2005.  This is known as the 'comparison point decision' or CPD.

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76;  Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2. At the time of the CPD, the claimant had the following medically determinable impairments: bipolar disorder and curvature of the spine. These impairments were found to result in the residual functional capacity that markedly limited her ability to maintain attention and concentration, maintain regular attendance, and complete a normal workday and workweek without psychiatric symptom interruption and perform at a consistent pace without an unreasonable number and length of rest periods.

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity.

4. The medical evidence establishes that, since October 15, 2014, the claimant has had the following medically determinable impairments: tri-malleolar ankle fracture, status post open reduction and internal fixation; scoliosis; lumbar degenerative disc disease; partial hearing loss; and bipolar disorder. These are the claimant's current impairments.

5. Since October 15, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. Medical improvement occurred on October 15, 2014.

7. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity.

8. Since October 15, 2014, the claimant has continued to have a severe impairment or combination of impairments.

9. Based on the impairments present since October 15, 2014, the claimant has had the residual functional capacity to perform light work except: no work in a loud environment and limited to simple repetitive tasks.

10. Since October 15, 2014, the claimant has been unable to perform past relevant work.

11. On October 15, 2014, the claimant was an individual closely approaching advanced age.

12. The claimant has at least a high-school education and is able to communicate in English.

13. Since October 15, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

14. Since October 15, 2014, considering the claimant's age, education, work experience, and residual functional capacity based

3

on the impairments present since October 15, 2014 the claimant has been able to perform a significant number of jobs in the national economy.

15. The claimant's disability ended on October 15, 2014, and the claimant has not become disabled again since that date.

AT 18-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erroneously weighed the opinions of plaintiff's treating physicians; and (2) the ALJ erroneously failed to develop the record.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

4

1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ improperly weighed the opinions of her treating physicians at Mercy Medical Group during the alleged disability period under review, October 2014 through July 2017. See AT 114-116. Mainly, plaintiff argues that the ALJ wrongly discounted a March 2017 opinion by psychiatrist Dr. Karl Zeff, who treated plaintiff multiple times between June 2014 and March 2017. Plaintiff also asserts that the ALJ improperly credited non-treating opinions as to plaintiff's physical limitations.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a

5

non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

On March 24, 2017, Dr. Zeff filled out a checkbox Medical Source Statement indicating that plaintiff had marked difficulties in the following areas: understanding and remembering detailed or complex instructions; ability to attend and concentrate; ability to work without supervision; and ability to interact with supervisors. AT 821-822. He further indicated that she had moderate limitations in the following areas: ability to carry out instructions; ability to interact with coworkers; and ability to adapt to changes in the workplace. AT 821-822. Dr. Zeff explained these limitations only by stating that plaintiff "reports of difficulties in this area," had "frequent problems with inattention and procrastination by patient reports," was "reportedly avoidant of most social interaction" and "forgetful of change instruction reportedly, poor ability to learn new technology." AT 821-822.

The ALJ addressed Dr. Zeff's March 2017 opinion as follows:

> Karl Zeff, M.D., the claimant's psychiatrist, opined that the claimant had marked limitations in her ability to understand and remember detailed or complex instructions, attend and concentrate, work with supervision, and interact with supervisors. She has moderate limitations in her ability to carry out instructions, interact with coworkers, and adapt to changes in the workplace.
>
> I accord little weight to this opinion because it is not consistent with the record as a whole, including generally unremarkable mental status examination findings as discussed above (particularly the March 2017 treatment note at Exhibit 28F which was during the same month as the opinion). Moreover, the opinion expressed provides little explanation of the evidence relied on in forming that opinion.

AT 26.

The ALJ cited mental status findings June 2015 and March 2017, discussed earlier in his opinion. <u>See</u> AT 24-25, 823-865 (Exhibit 28F). At a June 8, 2015 mental status examination conducted by Dr. Zeff, plaintiff was cooperative, oriented, with good eye contact, clear thought process, no impairment in cognitive status, no delusions or hallucinations, and unremarkable findings as to psychological insight, speech, affect, and self-control. AT 40-42; <u>see</u> AT 24.

However, her movement was restless and her speech verbose.  AT 41; see AT 24.  Similarly, at a March 24, 2017 mental status examination by Dr. Zeff, plaintiff's movement was "somewhat restless" and her anxiety "better than before," while her behavior, orientation, eye contact, speech, affect, thought process, cognitive status, and psychological insight were all normal.  AT 823-824; see AT 25.  Dr. Zeff noted that her Global Assessment Functioning (GAF) score was 65, indicative of mild impairment.[2]  Moreover, Dr. Zeff's treatment notes from June 2015 through January 2017 showed normal mental status exams and generally mild symptoms.  AT 828-829 (January 2017), 832-833 (July 2016), 838-839 (February 2016), 842-843 (November 2015), 848-849 (September 2015), 862-863 (June 2015).  These records "indicate some positive mental status examination findings, but moderate findings overall including GAF scores," the ALJ wrote.  AT 25.

While giving Dr. Zeff's March  2017 opinion little weight, the ALJ assigned great weight to the opinion of psychological consultative examiner Dr. Lenore Tate, who examined plaintiff on March 12, 2015, but did not review any of plaintiff's medical records, relying solely on plaintiff's reports and her examination as the bases for her opinion.  AT 715.  Dr. Tate noted that plaintiff "did appear to be experiencing some psychomotor agitation," including difficulty sitting still.  AT 718.  However, Dr. Tate noted that plaintiff's thought processes were coherent and organized; her thought content was relevant and non-delusional; her mood was "mildly anxious; however, she was pleasant during her evaluation and her affect was congruent with her thought content"; and her speech, orientation, fund of information, concentration, insight, and judgment were normal and/or intact.  AT 718-720.  As summarized by the ALJ, Dr. Tate "concluded that the claimant

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. A GAF of 71-80 indicates that symptoms are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after a family argument), resulting in no more than slight impairment in social, occupational, or school functioning. Id.

has no impairment in her ability to understand, remember, and carry out simple one or two-step job instructions.  She has moderate impairment in her ability to perform detailed and complex tasks. . . . She has moderate impairment in her ability to maintain concentration, attention, persistence and pace."  AT 26.

Additionally, the ALJ assigned great weight to a mental functional residual capacity assessment by State agency medical consultant Dr. V. Meenakshi, who reviewed plaintiff's medical records in August 2014 as part of the agency's continuing disability review.  AT 643-653.  Dr. Meenakshi noted that plaintiff had not taken psychotropic medications between November 2010 and April 2014, and opined that plaintiff was "capable of simple repetitive tasks."  AT 653.

The ALJ also assigned great weight to a mental functional residual capacity assessment by State agency medical consultant Dr. L. Gottschalk, who reviewed plaintiff's medical history and Dr. Tate's opinion in April 2015 and concluded that plaintiff had significantly improved since the decision finding her disabled in 2005.  AT 26, 732.  The ALJ credited Dr. Gottschalk's April 2015 opinion that plaintiff had certain moderate mental limitations but could perform simple, repetitive tasks; relate to supervisors, coworkers, and the public; adapt to changes in work routine; and should avoid hazards.  AT 26, 735-736.  Based on the foregoing, the ALJ provided legally sufficient reasons for discounting Dr. Zeff's March 2017 checkbox opinion.[3]

As to plaintiff's physical limitations, the ALJ accorded great weight to the opinion of internal consultative examiner Dr. Richard Chun, who examined plaintiff and reviewed her records in September 2014.  AT 26, AT 656-660.  Dr. Chun opined that plaintiff's polyneuropathy had "improved or resolved" since 2006 and that she had no limitations in standing, walking, and sitting.  AT 660.  The ALJ also credited the physical residual functional capacity assessments of State agency medical consultants Dr. A. Dipsia and Dr. D. Pong, who reviewed plaintiff's records in September 2014 and April 2015, respectively.  AT 26, 661-669,

---

[3]  Moreover, insofar as Dr. Zeff's March 2017 opinion was based on self-reported mental symptoms, the ALJ found plaintiff less than fully credible as to the severity of her symptoms, in an unchallenged finding.  AT 21, 25.

801-809.  Both opined that plaintiff was capable of light work.  The ALJ accorded "great weight to these opinions because they are substantiated by the objective medical evidence and consistent with the record as a whole."  AT 27; see AT 22-23 (summary of largely normal findings at September 2014 physical examination), AT 24 (summary of 2015-2016 medical records).

Having reviewed the record in conjunction with the ALJ's decision, the court finds no error in the ALJ's weighing of the medical opinions.

B.  Duty to Develop

Plaintiff next asserts that the ALJ did not adequately develop the record, as the consulting physicians did not review plaintiff's 2015 and/or later records from Mercy Medical Group.

Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented).  Evidence raising an issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

At the April 25, 2017 hearing, the ALJ left the record open for two weeks to allow plaintiff's attorney to submit any additional medical records from the relevant period.  AT 114-115.  See Tonapetyan, 242 F.3d at 1150 (ALJ may discharge duty to develop the record in several ways, including "keeping the record open after the hearing to allow supplementation of the record").  The ALJ reviewed the medical evidence through 2017, and plaintiff has not shown the existence of material, ambiguous evidence that would trigger a duty to supply the most up-to-date records to the consultative physicians.  Rather, the ALJ found the non-treating doctors' opinions consistent with the overall medical record, as set forth above, and plaintiff has not shown otherwise.  The court finds no error on this basis.

////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  August 27, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/brown1405.ssi.ckd